UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEDICAL & CHIROPRACTIC CLINIC, INC., a Florida corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) ) **CLASS ACTION** |
| MEDRISK, LLC., MEDRISK MANAGEMENT LLC, MEDRISK HOLDINGS, LLC, Delaware limited liability companies, and MEDRISK IPA, LLC, a Pennsylvania limited liability company, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiff, Medical & Chiropractic Clinic, Inc. ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, MedRisk, LLC, MedRisk Management, LLC, MedRisk Holdings, LLC, and MedRisk IPA, LLC (collectively, "Defendants" or "MedRisk"):

### PRELIMINARY STATEMENT

1. This case challenges Defendants' practice of sending unsolicited advertisements by facsimile.

2. The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 USC § 227 (hereafter the "TCPA" or the "Act"), provides in part:

(b) **Restrictions on use of automated telephone equipment**

> (1) Prohibitions
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

47 U.S.C. 227(b)(1)(C) (emphasis added).

3. The statutory language following "unless" sets forth the requisites for the established business relationship ("EBR") affirmative defense. The restriction regarding unsolicited fax advertisement falls under "automated telephone equipment." 47 U.S.C. § 227(b)(1)(C)). In passing the TCPA, Congress found, *inter alia*, that ". . . the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call . . .", Pub. L. 102-243, § 2, ¶ 13; and that "Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce," *id*. ¶ 14. In *Mims v. Arrow Fin. Servs., LLC*, the Supreme Court stated Congress passed the TCPA because unregulated telemarketing is "intrusive," a "nuisance," and "rightly regarded as an invasion of privacy." 565 U.S. 368, 372 (2012

4. The TCPA creates a private right of action for any person or entity that receives an advertisement in violation of the Act "or the regulations prescribed under" the Act and provides for "an action to recover for actual monetary loss from such violation, or to receive $500 in damages for each such violation, whichever is greater," as well as injunctive relief. *Id.* § 227(b)(3)(A)–(B). The TCPA defines "telephone facsimile machine" as any "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both)

from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3)

5. Defendants, or a person or entity acting on behalf of Defendants, in violation of the TCPA, sent Plaintiff an unsolicited fax advertisement on or about March 17, 2020 ("the Fax"), a true and correct copy of which is attached hereto as <u>Exhibit A</u>. The Fax advertises the commercial availability or quality of Defendants' rehabilitation services. The Fax states, *inter alia*, that "we wanted to take this opportunity to reassure you that Med/SPNet is open for business and servicing our clients and our network providers in our normal manner." (Exhibit A). In addition, the Fax states that "MedRisk/SPNet is confident that our ongoing business continuity measures will allow us to continue to schedule, monitor and support your patients' needs for physical rehabilitation." (*Id*.) The Fax contains the "MedRisk" and "MedRisk & SPN" logos at the top of the Fax. (*Id*.) The Fax contains no opt-out notice. (*Id*.)

6. On information and belief, Plaintiff alleges that Defendants, or persons and/or entities acting on behalf of Defendants, in violation of the TCPA, sent the same Fax on or about March 17, 2020, to the proposed Class. (*See* Ex. A). On information and belief, Plaintiff alleges that Defendants have sent other unsolicited advertisements via facsimile transmission in violation of the TCPA during the four years preceding the filing of this lawsuit.

7. Unsolicited fax advertisements damage their recipients. A junk fax recipient loses the use of their fax machine, as well as paper and ink toner if the fax is printed. An unsolicited fax advertisement also wastes the recipient's time that would have been spent on something else. An unsolicited fax advertisement intrudes upon the recipient's seclusion, violates the recipient's right to privacy, and is a nuisance. Unsolicited fax advertisements occupy fax lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause

undue wear and tear on the recipients' fax machines, and require additional labor and effort to attempt to discern the source and purpose of the unsolicited message.

8. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA. Plaintiff seeks to certify a class which were sent the Fax and other unsolicited fax advertisements that were sent without prior express invitation or permission and without compliant opt-out language (to the extent the affirmative defense of "established business relationship" is alleged). Plaintiff seeks statutory damages for each violation of the TCPA and injunctive relief.

9. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely, liability under the TCPA for sending unsolicited fax advertisements. This action seeks relief expressly authorized by the TCPA: (i) injunctive relief enjoining Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act, in the event willfulness in violating the TCPA is shown.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

11. This Court has personal jurisdiction over Defendants because Defendants transact business within this judicial district, have made contacts within this judicial district, and/or have committed tortious acts within this judicial district.

## PARTIES

12. Plaintiff, Medical & Chiropractic Clinic, Inc. is a Florida corporation.

13. Defendants, MedRisk, LLC, MedRisk Management, LLC, and MedRisk Holdings, are Delaware limited liability companies. Defendant, MedRisk IPA, LLC, is a Pennsylvania limited liability company. On information and belief, Defendants' principal place of business is located in King of Prussia, PA. MedRisk acquired SPNET (Select Provider Networks, Inc.) in January 2020.

## FACTS

14. MedRisk is a managed care organization which primarily works on workers' compensation claims.

15. Plaintiff is not a provider for any of Defendants.

16. MedRisk states it is ". . . the leading provider of managed physical medicine services for the workers' comp industry and related market sectors . . . MedRisk is more than just a call center. Experts in our chosen specialty and unified in a uniquely integrated, US-based support model, we provide all stakeholders in the workers' comp process – payers, employers, adjusters, case managers, physicians, network providers and injured workers – with evidence-based services that support the entire continuum of care." (*See* www.Medrisknet.com) (last visited March 11, 2021.)

17. On or about March 17, 2020, Defendants transmitted an unsolicited facsimile advertisement to Plaintiff using a telephone facsimile machine, computer, or other device. The Fax was "addressed" to Plaintiff's ten-digit telephone facsimile number, was sent over a regular telephone line, and was received by Plaintiff on its standalone fax machine. (Exhibit A). As set forth in ¶ 5, *supra*, the Fax advertises the commercial availability and quality of Defendants' rehabilitation services. (*Id*.)

18.     Defendants created or made Exhibit A, or directed a third party to do so, and Exhibit A was sent by or on behalf of Defendants with Defendants' full knowledge and authorization.

19.     On information and belief, Defendants receive some or all of the revenues generated from the sale of the property, goods, or services advertised on Exhibit A—their rehabilitation services and other medically related property, goods, or services—and the Defendants profit and benefit from the sale of the property, goods, or services advertised on Exhibit A.

20.     Plaintiff did not give Defendants "prior express invitation or permission" to send the Fax.

21.     The receipt of the Fax, an unsolicited advertisement, harmed Plaintiff in that it violated Plaintiff's right of privacy and interest in seclusion, and the Fax was a nuisance. Plaintiff was further harmed in that it wasted its time reviewing the Fax to determine that it was a "junk" fax. The Fax occupied Plaintiff's fax line and its standalone fax machine, causing it undue wear and tear, and wasted Plaintiff's paper and toner in that the Fax was printed. The Fax also required additional labor and effort to attempt to discern the source and purpose of the unsolicited message.

22.     On information and belief, Defendants faxed the same and other unsolicited facsimiles advertisements to Plaintiff and at least 40 other recipients or sent the same and other advertisements by fax without first receiving the recipients' express invitation or permission, and without having an established business relationship (EBR) as defined by the TCPA and its regulations.

23.     There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent

communications their owners desire to receive.

24. Defendants' facsimile attached as Exhibit A does not display a proper opt-out notice as required by 47 C.F.R. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4), making the affirmative defense of EBR unsustainable.

25. On information and belief, Defendants faxed the same and other unsolicited facsimiles advertisements without first receiving the recipients' prior express invitation or permission, and without the required opt-out language, *see* 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4), thereby precluding the affirmative defense of established business relationship.

26. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized fax advertisements. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

## CLASS ACTION ALLEGATIONS

27. In accordance with Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendants did not have an established business relationship, or (5) where the fax advertisement did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4).

Excluded from the Class are Defendants, their employees and agents, and members of the Judiciary. Plaintiff seeks to certify a class which includes, but is not limited to, the fax advertisement sent to Plaintiff. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

28. <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

29. <u>Commonality (Fed. R. Civ. P. 23(a)(2))</u>: Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

    (a)    Whether the Fax and other faxes sent during the class period constitute advertisements under the TCPA and its implementing regulations;

    (b)    Whether each Defendant meets the definition of "sender" for direct TCPA liability, meaning a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(10);

    (c)    Whether Defendants had prior express invitation or permission to send Plaintiff and the class fax advertisements;

    (d)    Whether the Fax contains an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

    (e)    Whether Defendants should be enjoined from faxing advertisements in the future;

    (f)    Whether Plaintiff and the other members of the class are entitled to statutory damages; and

    (g)    Whether the Court should award treble damages.

30.     <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>:  Plaintiff's claims are typical of the claims of all class members. Plaintiff received the same or similar faxes as the faxes sent by or on behalf of Defendants advertising the commercial availability or quality of Defendants' rehabilitation services during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute.  Defendants have acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

31.     <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>:  Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

32.     <u>Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))</u>:  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a)     Proof of the claims of Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

(b)     Evidence regarding defenses or any exceptions to liability that Defendants may assert and attempt to prove will come from Defendants' records and will not require individualized or separate inquiries or proceedings;

(c)     Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d)     The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small

claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

    (e)    This case is inherently manageable as a class action in that:

    (i)    Defendants identified persons to receive the fax transmissions and it is believed that Defendants' and/or Defendants' agents' computers and business records will enable Plaintiff to readily identify class members and establish liability and damages;

    (ii)    Liability and damages can be established for Plaintiff and the class with the same common proofs;

    (iii)    Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

    (iv)    A class action will result in an orderly and expeditious administration of claims and it will foster economies of time, effort, and expense;

    (v)    A class action will contribute to uniformity of decisions concerning Defendants' practices; and

    (vi)    As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

**Claim for Relief for Violation of the TCPA, 47 U.S.C. § 227 *et seq.***

33.    The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . ." 47 U.S.C. § 227(b)(1)(C).

34.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any

person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

35. **The Fax**. Defendants sent the Fax on or about March 17, 2020. The Fax was "addressed" to the recipients' ten-digit telephone fax numbers. The Fax was transmitted from a telephone facsimile machine, computer, or other device, through regular telephone lines, to the telephone facsimile machines of Plaintiff and the proposed Class. The Fax constituted an advertisement under the Act and the regulations implementing the Act, and the Defendants are the sender of the Fax. Defendants failed to comply with the Opt-Out Requirements in connection with the Fax, thereby precluding the affirmative defense of EBR.

36. Plaintiff and the Class were subjected to an invasion of their privacy and their interest in seclusion in being sent the unsolicited fax advertisement, and the Fax was a nuisance. Plaintiff and the Class wasted their time determining that the Fax was an unsolicited advertisement (junk fax), and the costs of advertising were shifted from the Defendants to the Plaintiff and the Class. Plaintiff and the Class wasted money on paper and toner in the event that Fax was printed, and Defendants occupied Plaintiff's fax lines. Plaintiff seeks to certify a class which includes this Fax and all others sent during the four years prior to the filing of this case through the present.

37. **Defendants' Other Violations.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendants have sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class other faxes that constitute advertisements under the TCPA that were transmitted to persons or entities without their prior express invitation or permission (and/or that Defendants are precluded from sustaining the affirmative defense of EBR due to a

noncompliant or nonexistent opt-out notice. By virtue thereof, Defendants violated the TCPA and the regulations promulgated thereunder.

WHEREFORE, Plaintiff, Medical & Chiropractic Clinic, Inc., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, MedRisk, LLC, MedRisk Management, LLC, MedRisk Holdings, LLC, and MedRisk, jointly and severally as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

C. That Court enjoin Defendants from additional violations; and

D. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

    Respectfully submitted,

    MEDICAL & CHIROPRACTIC CLINIC, INC., a Florida corporation, individually and as the representative of a class of similarly-situated persons

    By: s/ Brett Freeman
    Brett Freeman: PA 308834
    SABATINI FREEMAN, LLC
    216 North Blakely St.
    Dunmore, PA  18512
    Telephone:  570-458-2008
    Brett@sabatinilawfirm.com

    And:

Ryan M. Kelly (*pro hac vice to be submitted*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  847-368-1500 / Fax:  847-368-1501
rkelly@andersonwanca.com
